Richard S. Heller, J.
At the time of the appropriation alleged herein, the claimants were the owners of a parcel of land on the south side of New York State Route No. 10 in the Town of Walton, Delaware County. Improvements on the premises consisted of a small single-family frame residence and a detached garage.
In 1959 the State commenced work on a project designated as Rock Rift-Colchester State Highway No. 1271, which involved a widening and improvement of Route 10. The plans for the improvement project indicated and it soon became apparent to the claimants that the State asserted not only that its right of way was more than adequate for the highway improvement, but also that it extended almost to their doorstep. Taking objection to the State’s assertion, the claimants filed this claim which is for an alleged de facto appropriation of a strip of land eight *1020 feet or approximately one-half rod in depth running across the front of their property.
Although no appropriation map was served upon claimants, the court determined at the trial that if in fact there had been a taking, the same occurred on November 15, 1959. The claim was duly filed within two years thereafter and has not been assigned or tried before any other court or tribunal for audit or determination.
The State based its assertion of right upon the assumptions that its right of way is coextensive with that originally occupied by the Ulster and Delaware Turnpike and that such right of way was and is four rods wide. The validity of these assumptions depends ultimately upon events which may or may not have occurred soon after April 2, 1802.
On the date last mentioned, the New York Legislature passed “An act to establish a Turnpike Corporation for improving and making a road from the west line of the town of Salisbury, in the state of Connecticut, to the Susquehannah river, at or near the town of Jericho.” The statute (L. 1802, ch. 98), after describing the course of the road in general terms, provided “ That three Commissioners not interested in the Turnpike, who shall be nominated and appointed by the Governor and Council of Appointment, shall lay out such road according to the best of their judgment and understanding, in such manner as that the object of Corporation and the general interest of the public shall be in the best manner effected, without favour or partiality, but to conform to the directions of this Act where it may be practicable; and it shall be the duty of the Commissioners so appointed, to deposit in the office of the Clerk of the county through which such road shall pass, an accurate map of the survey of the same, designating the several particular points through which the said road shall pass ”.
After the road had thus been laid out and described, the president and directors of the corporation, known as the Ulster and Delaware Turnpike Road Company, were to acquire the necessary right of way by purchase or condemnation.
The only proof presented upon the trial of the claim pertaining to the initial right of way acquisition consisted of a certified copy of a “ Field Book ” which had been filed in the Delaware County Clerk’s office on March 19, 1810. This book purported to contain survey notes describing the course of the “Ulster and Delaware Turnpike Road from the division line between the counties of Ulster and Delaware to the division line between the counties of Delaware and Chenango ” and appeared to have been signed by a surveyor and two individuals designated as *1021 “ Comrs.” No proof was presented with respect to whether the individuals whose signatures appeared on the “Field Book” were nominated in the manner prescribed, no map or any evidence that one had ever been filed was produced, and no proof was presented indicating what, if any, steps were taken to purchase or condemn the necessary right of way.
In an attempt to establish that what the Legislature authorized in 1802 had in fact taken place, the State requested the court to take judicial notice of chapter 203 of the Laws of 1808, amending the earlier statute and containing a statement that “ since the passing of the aforesaid act, a turnpike road has been granted and which has been laid out, and is now in operation on the route prescribed by the said act.”
Although this language, taken out of context, might appear to support the State’s position, the 1808 act, in its preamble, referred specifically to section 23 of the 1802 statute which clearly pertained to a highway other than the Ulster and Delaware Turnpike. Thus, the fact that the road or highway described in section 23 may have been properly laid out and the rights of way thereto lawfully acquired means little in this claim.
The court has also, as requested, taken judicial notice of the provisions of chapter 178 of the Laws of 1816 and chapters 210 and 398 of the Laws of 1847. These statutory provisions, together with exhibits produced by the State, indicate that the right of way of the Ulster and Delaware Turnpike from the Village of Delhi through the Town of Hamden to the Village of Walton was subsequently acquired by the Delhi Plank Road Company and ultimately vested in the State of New York. Mylar overlays of plottings of the line described in the 1809 “ Field Book ” referred to above and the line described in a survey purportedly conducted in 1850 for the Delhi Plank Road Company indicate that, in the vicinity of claimants’ property, the turnpike and the plank road traversed substantially the same path now taken by Route 10. Thus the conclusion that the three rights of way were coextensive may be justified and has been assumed.
The court has therefore found that the State is entitled to claim whatever right of way was originally acquired by the Ulster and Delaware Turnpike Road Company.
The statute here involved (L. 1802, ch. 98), unlike those dealt with in Schillawski v. State of New York (9 N Y 2d 235) and Frankfater v. State of New York (17 A D 2d 515) specifically provided for the filing of an accurate map portraying a highway as laid out by and surveyed under the direction of an independent tribunal, appointed by the Governor. Only after these pre *1022 liminary steps were completed could the land acquisition commence. As noted above, however, there was no proof that commissioners had in fact been appointed, that a map had been prepared and “deposited” in the Delaware County Clerk’s office, or that the further steps prescribed by the statute for acquisition had been taken. This absence of any proof with respect to the manner of acquisition, or attempt to acquire, is a further distinguishing factor between the present situation and those involved in Schillawski and Frankfater.
The question thus presented is whether the statute establishing the corporation and the “ Field Book ” purporting to contain a survey of the course of the highway constitute sufficient affirmative proof to justify a finding that a four-rod right of way was acquired pursuant to statutory authority.
The court is aware of the rule that ‘ ‘ where a highway is defectively laid out under color of statutory authority, it will be deemed to create a prescriptive right to the width prescribed by statute, although greater than the extent of the actual user ’ ’. Schillawski v. State of New York (9 N Y 2d 235, 239). Although the Court of Appeals did not elaborate upon the “ color of statute ” rule, an examination of the authorities cited, in addition to other decisions applying and treatises referring to and explaining the rule, has led the court to feel that it can be of no assistance to the State in this claim.
Decisions in cases dealing with attempted but defective establishment of highways must be analyzed in the light of the particular factual situation giving rise to the controversy in each case. (Ann. 76 ALR 2d 535, “ Highway — Width and Boundaries ”, § 13.) The decision in Pillsbury v. Brown (82 Me 450) cited by the Court of Appeals in Schillawski, has been widely cited by other courts and authorities and provides a good example of the type of factual situation in which the “ color of statute ” rule has been applied. The procedural defects in laying out the highway involved therein did not appear to have given rise to any uncertainty concerning the location and dimensions of the contemplated right of way, and the plaintiff property owner had acquired title by a deed in which the depth specifications and the monuments used tended to support the municipality’s claim to the disputed area. Furthermore, the court, in its statement of the rule, impliedly limited its applicability to situations where the right of way purportedly acquired was 1 ‘ clearly and distinctly ’ ’ defined.
Statutes conferring the power of condemnation should be strictly construed in determining not only the extent of the power, but also whether the power has been properly exercised. *1023 (1 Nichols, Eminent Domain, § 3.213.) Although the “ color of statute ” rule may provide the courts with a certain amount of latitude in assuming compliance with a statute where the record is not entirely clear, there is no authority for its use as a carte blanche permitting records such as that before the court to be filled out by presumption. In fact, in the present case, there was literally nothing to presume from, since there was no affirmative proof that any of the steps specifically prescribed by the statute had been taken.
Certain references in the 1809 survey notes suggest the possibility that the Ulster and Delaware Turnpike in the vicinity of claimants’ property followed the course of an earlier road. If this was the case, it might throw some light upon the apparent absence of records of any right-of-way acquisitions in Delaware County. It by no means would provide any support for the State’s assertion of a four-rod right of way.
It is therefore the determination of the court that the State has failed to establish that a four-rod road had ever been acquired and that user is determinative.
Certain obvious problems in determining the extent of user were removed by amendment of the claim during the trial. As amended, the claim is limited to the southerly eight feet of the area claimed by the State. Thus, although prior to the widening of the highway, the area seeded, maintained and used as a front lawn was 20 feet deep, the claimants have, in effect, conceded that the State had a right to destroy all but 8 feet of their front lawn. Nevertheless, the difference between 8 feet and 18 inches could hardly be classified as slight.
With respect to damages, the court has found that, prior to the appropriation, the fair and reasonable market value of the property was $9,500. In 1962, the claimants sold the property for $6,500, and the court has adopted this figure as the fair and reasonable market value of the property after the taking. The claimants have therefore been damaged in the amount of $3,000, of which $500 represents direct damage and $2,500 represents consequential damage to the remainder.
The claimants are entitled to an award in the amount of $3,000, with interest from November 15,1959 to May 15, 1960 and from November 13, 1961 to the date of entry of judgment.
The award to claimants herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees, and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or *1024 contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water and sewer and railroad lines.